Final case this morning is Agenda Number 4, Case 105-092, People v. Jermaine Davis. Mr. Hoff, you may wait just another second or two. We'll let everybody get seated behind you so you won't be disturbed. Thank you, Judge. And you may proceed. May it please the Court, my name is Doug Hoff. I'm with the Office of State Appellate Defender representing Jermaine Davis. The central issue in this case is the trial court erroneously instructing the jury that it could convict Davis of felony murder based upon aggravated battery. Precedents from this court dating back to 2001 hold that where an aggravated battery is inherent in the homicide and there is no independent felonious purpose, it cannot serve as a predicate offense for felony murder. This rule, which the state would have this court discard, is fully consistent with the legislature's intent. As Justice Thomas wrote in Morgan and Justice Fitzgerald reiterated in Pelt, every murder contains an aggravated battery. Thus, if the acts constituting an aggravated battery are inherent in the murder, the state would be relieved of ever having to prove intentional or knowing murder. Those two parts of the homicide statute would essentially be rendered superfluous. This court will not presume that the legislature enacted them as a meaningless gesture. Also, since second-degree murder is only applicable to intentional and knowing murder, the state could prevent that partial defense from ever being raised by the simple expedient of only charging felony murder. Again, this court will not presume that the legislature enacted the second-degree murder statute with the intent that it never be raised. The state would have this court overrule the holdings in Morgan and Pelt and Taiwan Davis and return to visor, under which any aggravated battery could serve as the predicate to felony murder. This court should decline their request to do so. This is a matter of statutory interpretation and visor was decided in the pre-amended homicide statutes. At the time visor was decided, it was unclear whether voluntary manslaughter applied to felony murder, but the present-day second-degree murder statute clearly does not apply to felony murder. Different statutes call for different interpretations and there is simply no basis to resurrect visor. The state proposes that to address the second-degree murder concerns, this court simply carve an exception to visor where there is evidence of second-degree murder,  This would be a fundamental abrogation of the second-degree murder statute, which actually by its explicit terms prohibits its application to felony murder. It would also be unworkable. If the state proceeded on felony murder and some evidence of second-degree murder surfaced at trial, presumably the defendant would then be entitled to a discharge. In this case, am I correct that he was charged with three counts of murder, is that right? That is correct. Intentional murder, strong probability, and felony murder. Felony murder, correct. And then the jury returned a guilty verdict. Yes, it did, it returned a general verdict. And as well as aggravated battery. Correct. So we don't know whether it was a felony murder determination or an intentional murder. There is some strong indications here that it was in fact felony murder, because under Morgan we can look at the other things the jury did. In that case, in Morgan the jury convicted the defendant of second-degree murder. So under the circumstance of that case, they must have found the defendant guilty of intentional murder. In this case, we have the jury convicted Mr. Davis of the predicate felony, aggravated battery, which sort of automatically flowed into the felony murder. So there is that. There is also the fact that the state argued very strenuously for them to convict Mr. Davis of felony murder, going so far as to stating that if they followed their oath, they should find him guilty of aggravated battery and then pretty much automatically to felony murder. So there is that as well. So the one good count presumption has to be predicated on something at trial under Morgan. And here, from the trial, we simply can't presume that the jury convicted the defendant of intentional or annoying murder. Then there is also the problem that since felony murder predicated on aggravated battery that violates Morgan and Pelt, simply is not an offense under Illinois law. So that means one of the things that was submitted to this jury enabled them to convict Mr. Davis without ever actually finding him guilty of an offense under Illinois law. Now this court in Pelt said that because the jury in that case had actually convicted him very explicitly on felony murder predicated on aggravated battery, this court found that that offense did not exist and ordered him discharged. It wasn't a mere matter of instructional error or court error. It was a conviction predicated on something that was not an offense. Now here, one of the three doesn't exist. So under, and since to convict somebody predicated on an offense that does not exist under law is a violation of the due process clause, that means one of the alternatives submitted to the jury violating due process. Now under Stromberg and its line of cases, the possibility of a jury convicting a defendant of an offense that is unconstitutional is in and of itself enough to require relief. The court cannot allow the possibility of the defendant's rights being violated to be sort of covered up by this general verdict. Now here we have a due process violation because the offense didn't exist. In Stromberg, some of the other cases it was a full faith and credit violation or it was a First Amendment violation, but there's no real principled ground for drawing a distinction there. One of the counts still was unconstitutional. So because there is this possibility that Mr. Davis was convicted of an offense that did not exist under Illinois law, this court should grant him relief. And I also would return to the discussion of the erroneous part of this, or the error part of this issue, is that under Morgan and Pelt, they clearly established this rule that if the aggravated battery is inherent in the homicide, it can't be a predicate for felony murder. The felony murder can't be allowed to subsume all the other parts of the murder statute and preclude any submission of second degree murder. And here, applying Morgan and Pelt to the facts of this case, it's clear that the acts were inherent, the acts that constitute the aggravated battery were inherent in the homicide. They were pled identically. They were pled both in the aggravated battery and in the murder count as having beaten the decedent with hands, feet, and a board. In both counts. So these acts were very clearly inherent in both the aggravated battery and in the homicide. So under Morgan and Pelt, this was an offense that was not a proper felony murder predicate, and therefore that count was actually void. And since the jury was instructed that they could convict Mr. Davis without finding the elements of any proper offense under Illinois law, the general verdict does not preclude him from obtaining relief. Was a motion ever made prior to trial challenging the charge? Nothing prior to trial. Actually, Morgan came down while this case was pending. And the matter was raised in the post-trial motion, but nothing pre-trial. Therefore, Mr. Davis would respectfully move this court to reverse his conviction and remand this cause for a new trial, or in the alternative, remand for further proceedings on his Batson motion as we argue in our second argument. Thank you. Ms. Fitzgerald. Good afternoon, Mr. Chief Justice Fitzgerald, Honorable Justices, Counsel. My name is Assistant State's Attorney Amy Wittrobekern, here on behalf of the people of the State of Illinois. It's clear that the trial court in this case did not err by instructing the jury on the felony murder theory of first-degree murder under the facts of this case. There is absolutely nothing unconstitutional, no constitutional infirmity with predicating felony murder on an aggravated battery that is committed against the same victim and defendant does not claim otherwise. He does not claim that there is anything infirm about such a theory of liability under murder. There is also nothing in our criminal code that precludes instruction on such a theory. In fact, the legislature has expressly included aggravated battery in the definition of forcible felony and chosen not to exclude aggravated battery as a permissible predicate for a felony murder under the A3 section of the murder statute, which is the felony murder theory. Insofar as defendant claims that allowing for felony murder predicated on aggravated battery of the same victim somehow renders the knowing or intentional theories of first-degree murder superfluous, his argument is not persuasive. A felony murder theory no more renders knowing and intentional murder superfluous than a knowing theory of murder renders intentional murder superfluous, since every intentional murder could also be prosecuted under a theory of knowing murder. Our legislature has created one offense of first-degree murder and set forth three means by which a defendant may commit such an offense and be convicted of first-degree murder. The felony murder section, section A3, is intended to deter the commission of forcible felonies, including aggravated battery, by holding the perpetrator responsible for murder if a death results during the course of that felony. Any theoretical concerns regarding the effective elimination of the second-degree murder offense have been addressed by the legislature through its exclusion of conduct which constitutes second-degree murder as a predicate for felony murder. Here, it must be noted that there is decidedly no merger problem, as it has been called, either actual or theoretical. There was no issue of mitigated mental state in this case. The facts of this case were that defendant and two Confederates savagely beat Demetrius Thomas. There was no evidence put forth by either the state or the defense that there was any mitigated mental state or provocation or self-defense. After the savage beating, which resulted in Demetrius, which did not end until Demetrius was unconscious and face down on the ground, defendant threw his body into a garbage dumpster and then he and his Confederates went and socialized outside a building. These facts are strikingly similar to those that were presented in visor, where this court held that felony murder predicated on agbat of the same victim was a proper charge. In visor, the defendants beat two off-duty police officers and one officer died as a result of his injuries. The felony murder theory was predicated on the aggravated battery of the same officer who died and like Demetrius in this case, that officer died two weeks later, in this case it was two months later, as a result from complications that arose from the initial injuries during the assault. In upholding the felony murder aggravated battery count in that visor, this court recognized the inherent separation of powers problem in a defendant's merger argument under our criminal code. Because our legislature has forthrightly characterized aggravated battery as a permissible felony for felony murder that will trigger a charge of felony murder, this court must defer to the express mandate of the legislature. Because felony murder predicated on aggravated battery is expressly permitted under Illinois law, this court should find that there was no error in instructing, so instructing the jury in this case. On the three occasions since visor that this court has addressed situations where there have been felony murder charges or instructions predicated on some form of assaultive conduct against the same victim, this court has explicitly and implicitly noted its concern that by allowing such a theory of liability for first degree murder, the state could eliminate second degree murder altogether and avoid proving an intentional or knowing murder by charging every murder as a felony murder. Again, neither concern exists in this case because in this case, the state proceeded on all three theories of first degree murder, intentional, knowing, and felony murder. And there was no issue of mitigated mental state. These concerns have driven this court. I assume that it's your position then that this court need go no further than the general verdict argument then? Yes. Actually, under the one good count rule, this court could effectively not address the propriety of the instruction because based on the quality of the evidence presented at trial, which I think defendant's one good count argument kind of gets away from what the correct analysis is, that really what counsel claimed that the one good count presumption must be based on something and that something is the quality of the proof admitted at trial. Here, the proof, the evidence produced at trial, certainly supported the entry of judgment on intentional murder, which is what the trial court did in this case. The severity of the beating, the fact that they resumed the beating. At one point, Demetrius was able to escape this attack and he ran to the back of the building. Defendant and his confederates chased him to the back of the building, resumed the beating, and did not stop until he was unconscious. They then concealed the body in a dumpster, ensuring or at least minimizing any chance of aid, minimizing any chance that he would receive immediate medical attention. This evidence certainly demonstrates that defendant and his cohorts, this was a direct and accountability theory case, acted with the requisite mental state for intentional or knowing murder. So based on that, this court could affirm on that basis alone. I was going to ask this question, but maybe you just did it. Is that how you address counsel's argument of looking at the Morgan facts to determine that felony murder or intentional murder was a valid way of approaching the general verdict issue? Do you recall his discussion of Morgan? I do. I think that Morgan, this court's application of the one good count rule in Morgan, actually buttresses the state's position as opposed to defendants. Because in Morgan, the claimed infirmity was exactly the same as the claimed infirmity here. That is an aggravated battery theory predicated on, excuse me, a felony murder theory predicated on aggravated battery of the same victim. The fact that the court applied the one good count presumption in that case suggests that it should do likewise in this case. And actually, I would submit that under the facts of this case, there's even, because there is no issue of mitigated mental state, whereas there was in Morgan, and I think that's maybe what drove the analysis in looking at the other, there were two victims in Morgan, so looking at what the jury did with respect to the other victim, that the concerns about second-degree murder drove that analysis in Morgan. Whereas here, there are no concerns about second-degree murder. So really, this court need look no further than the fact that the proof, the evidence at trial, supports intentional murder in this case. As we discuss in our brief, any concerns that may have driven this court to a somewhat elastic or conduct-based analysis in Morgan, and then again in Pelt, and also in Davis, if applied in this case, could lead, if accepted, if defendant's theory was accepted, could ultimately lead to a result, would lead to a result, that contravenes the clear and express mandate of the legislature. There is no need to implement a judicial limitation on the felony murder rule in Illinois. The legislature has already addressed it by enumerating which forcible felonies may serve as predicates for felony murder, and by excluding second-degree murder. As far as visor, defendant claims that the visor analysis is somehow no more applicable because of changes in the code, specifically the change of voluntary manslaughter to second-degree murder. That argument is really not persuasive, because when the legislature changed in voluntary manslaughter to second-degree murder, and when they allowed for, as this court held, I believe it was in Morgan, that second-degree murder is not a defense to felony murder, they could have very easily added aggravated battery to A3 of the murder statute. Just as they excluded second-degree murder, they could have also then, in reaction to visor, if they disagreed with this court's holding in visor, they could have excluded aggravated battery from Section A3 of the murder statute, and they did not. The state is not, as defendant contends, through his arguments, in any way relieved of its burden of proving a mental state for a murder offense when a jury is instructed, as it was in this case, on all three theories of murder. All felony murders, whether the predicate is an assault of conduct or not, involve a felonious mental state element. They involve whatever the mental state is for the underlying forcible felony. The legislature has determined that when a perpetrator commits a forcible felony with the requisite mental state to prove that forcible felony and a death results, that that equals first-degree murder. That is the third theory of first-degree murder. Defendant's attack on the instructions on this basis really amounts to a generalized attack on the felony murder doctrine in Illinois, which clearly would not be persuasive. In short, the felony murder aggravated battery instruction in this case was not erroneous. It was permissible under Illinois law. This court should honor the plain language of the criminal code and not read into it a limitation on the felony murder doctrine that does not exist and that is contrary to the legislature's intent that liability for felony murder at the broadest level of attachment for liability of felony murder apply. And as we outline in our brief, that's our primary argument, the plain language. In the alternative, if this court continues to adhere to the conduct-based analysis espoused in Morgan and Pelt and Davis, no error occurred in this case. I would direct this court's attention specifically to its last paragraph in Davis where it noted that the outcome in Davis was wholly consistent with Visor and then went through the facts in Visor and said that even under Davis, Visor is still good. And since the facts here are exactly those that were in Visor, the theory is still viable under Illinois law. With respect, finally, to the Stromberg issue, it's the state's position that there is no Stromberg issue because there was no constitutional infirmity with the charge or the instruction in this case and defendant has not demonstrated a violation of due process. The one good count presumption in Illinois should be applied as it has been consistently. The fact that defendant was also convicted of aggravated battery, as we point out in Cardona, there was a conviction for the underlying predicate felony that I think eliminates or minimizes defendant's argument in that respect. And for these reasons, we would ask that you affirm defendant's conviction and also we stand on our brief with respect to the Batson issue. Thank you. I have a couple of questions. Oh, sure. Given the record in this case, would it have been better for the assistant state's attorney to have reminded the judge of the proper Batson procedure? Would it have been better? Yes. Or is it your position that when the trial court asked for race due to reason, that he had already found a prima facie case had been established? No. Recognizing, obviously, the cases that say that once a court asks the state to articulate a race neutral reason, any examination of prima facie case is somewhat moot. I think it certainly would have been a better choice to kind of flush it out more, either at the stage urging or at the... I think if they had flushed it out more, they would have found that the reasons for striking this witness, it was the same answers given by four other potential jurors or three others. Roy Huntinghouse was asked by the prosecutor, could you be a fair juror in this case? And he replied, I think so. The prosecutor asked Kimberly Katuka, can you be fair to both sides in this case? And she replied, I believe I can. Peter Pick was asked by defense counsel, do you think if you were called to be a juror in this case, you could be fair to the defendant? Yes, I think so was the answer. And all of these answers were similar to the one minority member who was stricken from the jury. If counsel had presented, if the proper procedure had been followed, then counsel could have presented these answers to the judge rather than just jump right to an answer from the state as to whether or not there's a race-neutral basis for it. This was never presented to the court in comparison with what these other jurors had said. Well, the onus is on the defendant when he raises a Batson claim to establish prima facie. I disagree. I think there's a burden on the judge as well. I think it's the fault of the trial judge who collapsed the proceedings in the first place. Well, on a very base level, as far as the comparison that Your Honor just referenced, I note that we don't know from this record even what the race of these three other jurors, the races of these three other jurors are. So unless, I mean, it's really a great leap of conjecture and speculation to assume that those three jurors were not minorities, as was Mr. Hicks. Without even knowing the race, no comparison, no meaningful comparison could really be made. And I think it's clear when the Batson colloquy is examined in its entirety, that really any issues as far as the inadequacy of the record or ambiguities really I think would be attributable to the defense, given the fact that. . . If this is your position then that if the race can be established for the three potential jurors or the jurors that I had mentioned, then there could be a Batson problem here. No, not necessarily. It wouldn't matter either way. Well, I think that we point out that the race can't be established. Just to point out that defendant's entire comparison on appellate review is really without basis in the record. Even if the races were known, it's clear as we outline in our brief that there were other legitimate reasons. First of all, that a few of those individuals did not equivocate in the same manner that Mr. Hicks did. And that there were other. . . How did Mr. Hicks not equivocate? He was asked whether he could be fair and he said, I think so. Mr. . . . Ms. . . . Let's see. Mr. Huntinghouse subsequently clarified his answer and stated that he had no hesitation that he could be fair. Veneer person Katulka, we point out first that she didn't necessarily equivocate. It appears that she maybe had a habit of amplifying her responses with the word believe, as in, yes, I believe I can, or no, I believe I can, something along those lines. But even if she did equivocate, then for the reasons we outline in our brief, she had many other characteristics, including previously serving on a jury that reached a verdict in the criminal courts building in Cook County that would differentiate her from Mr. Hicks. Mr. Hicks said nothing else other than what you've quoted. He just said the questioning of Mr. Hicks in the record is not very extensive. He was asked if he could be fair and he said, I think so, if I believe is the exact quote. Yes, other than questions about his background and his personal characteristics, that was the extent of his equivocation. If Mr. Hicks, if the record should show that Mr. Hicks did say something else in addition to what you have quoted, would that be a basis then for considering this a bad situation? Well, no. He did, when he was subsequently indicated that he was comfortable that he could be fair. However, as the case is outlined in our brief say, his initial equivocation still is maintained as a sufficient race-neutral basis. His initial equivocation, despite any what defense argues was some type of rehabilitation, that initial equivocation is a facially race-neutral reason. And the trial court found it to be facially race-neutral and found that there was no vats in violation, which necessarily no purposeful discrimination. And they found this without the defense having an opportunity to present its case to establish that there was bias? No, the defense did say, the defense did offer an argument that, regarding another juror, Mr. Andre, honorably or honorable, and also did generally claim that other jurors had said, I don't know. He did, he wasn't prevented from making any argument by the court. There's no indication, I don't think that can be read from the record. It's just clear that while maybe this was a bit of a complicated colloquy, there doesn't seem to be any type of truncation by the trial court of defense counsel, any prevention of making an argument. And I think if we look at the court's ruling at the post-trial motion, where he also addresses, the trial judge addresses Batson and says, and reaffirms his holding, I considered the evidence that was presented. There was clearly no Batson violation in this case. I guess I'm back to my first question then. Which was, I'm sorry? Considering the record in this case, would it have been better for the assistant state's attorney to remind the judge of the proper procedure in a Batson issue? Would it have been better for the assistant state's attorney to ask the court to expressly make a determination of whether he was finding a prima facie case of discrimination? Certainly that would have been better. That would have been preferable. However, that did not occur, and the fact that there was arguably a collapse in the first and second stage doesn't change the fact that there were appropriate second and third stage proceedings held and a proper determination was made that should be granted the appropriate deference. The trial court's determination that Batson was not violated should be affirmed. Are there no other questions? Thank you very much. Mr. Hoffman. I think the characterization of the Batson proceedings in this case as being somewhat irrevel- I'm sorry, what did you say? As being somewhat irregular, and it's kind of an understatement here. First we started out where apparently there had been some discussion about something concerning this particular juror's strike off the record, but it was also very clear that no formal Batson had yet been made, but the trial court nonetheless decided to request for the prosecutor to give his reasons for making the strike. So immediately jumped over one stage. And then counsel had to contest those explanations, basically saying there were other people who equivocated in the same manner, or supposedly equivocated in the same manner. And then the trial court actually sort of launched into a digression about, I believe the exact quote is, these allegations are easy to make, and then seemed to be accusing the defense of accusing the prosecutors of being racists. And it sort of went off from there and returned to, I believe at that point, a second juror that hadn't been- the strike which hadn't actually been challenged. So the proceedings here were- barely resembled the prescribed Batson procedure. I think it is correct that it would have been incumbent upon the state, since there was no actual Batson motion made to begin with, to remind the trial court, hey, there hasn't been a motion here. I don't have to give my reasons. You haven't found a prima facie case. We haven't gotten anywhere close to that stage. How do you address the state's forfeiture argument? I mean, this is a court of review. We're left with the record that's before us. We don't even have in the record the defendant indicating the race of the jurors who were not dismissed under the best case scenario for the defendant and had the same equivocal answers. That's true. There isn't an explicit record on their race. Is that a forfeiture of the entire issue, then? Well, I would say that because the trial court had itself digressed so far from Batson procedure, that any deficiencies in the record here are the fault of the court rather than of the defense. Because the defense attempted to make a proper motion after proceedings returned to the record, and as I said, the trial court sort of went off in this digression about what actually was involved in a Batson motion. So if there are deficiencies in the record, they certainly can be remedied on remand for further proceedings, because the stages we're here were collapsed to the point where the proceeding was basically unrecognizable. And there are two questions. There are really two questions here. One, are the explanations race neutral on their face, which is essentially anything but I struck this juror because he or she was a member of a minority or because of her gender? And also, there's a second question. Is the race neutral reason pretextual? Those are two distinct questions. And the trial court here collapsed all that one into sort of a broad, undifferentiated review of the prosecutor's strikes. So, and also, as far as... Well, we deal with issues of, you know, alleged error by the trial court all the time, and that does not preclude the responsibility of the appellants in those cases in bringing to the attention of a court of review to exactly what happened below. I mean, you're saying, well, it was undiscernible bats in hearing, so everything falls on the court, and there was no responsibility on the part of the defendant to at least indicate the race of these jurors? Well, counsel did state that there were other people who had equivocated in a similar fashion. And under some of the case law here is there was no objection from the state saying, wait, these people were also minorities or, you know, they didn't equivocate in the same way. So in some of the cases here where you have a statement like that, you can take it as a given that those strikes were also relevant to the Batson analysis and consider them as well. So if I return briefly to the felony murder issue, this case is one thing about visors. Visor itself promulgated a very broad rule. Any aggravated battery can serve as a predicate for any felony murder. It did not conduct a factual analysis to come to this conclusion of facts at hand in that case. So therefore, its discussion of the facts there isn't necessarily germane to the facts in this case because it essentially was totally unnecessary to the court's conclusion. The facts there could have been anything, and the result would have been the same. So therefore, for the reasons we put forward, we request this court to reverse and remand for further proceedings on the Batson hearing or for a new trial. Thank you, Counsel. Case number 105-092, People v. Germaine Davis, will be taken under advisement.